UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC. | * | CASE NO: |
| | * | |
| VERSUS | * | |
| | * | |
| SWEET ULTIMATE BAR AND GRILL LLC D/B/A SWEET ULTIMATE BAR AND GRILL AND DEBRA JACKSON | * * * | JUDGE: |
| | * | |
| | * | MAGISTRATE JUDGE: |

# COMPLAINT

**To the Honorable Judges and Magistrate Judges of the United States District Court Middle District of Louisiana:**

NOW INTO COURT, through undersigned counsel, comes J&J Sports Productions, Inc. (J&J), a corporation organized under the laws of the State of California with its principal place of business located at 2380 South Bascom Avenue, Suite 200, Campbell, California 95008 and files its complaint for the following reasons:

## Venue

1.

Venue is proper in the Middle District of Louisiana because all of the defendants' actions and omissions occurred at the commercial establishment of Sweet Ultimate Bar and Grill LLC d/b/a Sweet Ultimate Bar and Grill (Sweet), 3669 Government Street, Baton Rouge, East Baton Rouge Parish, Louisiana 70806. East Baton Rouge Parish is one of the parishes composing the territory of the United States District Court for the Middle District of Louisiana. Also, the other defendant, Debra Jackson, is domiciled at/in 1457 Carolyn Sue Drive, Baton Rouge, East Baton Rouge Parish, LA 70816 , which is within the territory of the United States District Court for the

Middle District of Louisiana.

**Jurisdiction**

2.

J&J asserts that jurisdiction of the Court is based upon:

(A) 28 U.S.C. section 1331 because the action presents a question or questions of federal law arising under the Constitution of the United States and other laws of the United States as follows:

(i) The Communications Act of 1934, as amended, Title 47 U.S.C. 605, et seq. ;

(ii) The Cable & Television Consumer Protection and Competition Act of 1992, as amended, Title 47 U.S.C. section 553, et seq., which specifically provides that a civil action may be brought in a United States District Court 553 (c)(1) ; and,

(iii) Title 18 sections 2511 (1) (a), (5) and 2520 (a).

(B) Complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs as provided in 28 USCA section 1332.

As discussed in detail below, all of the defendants committed certain acts and omissions that violated J&J's rights as the exclusive commercial domestic distributor of the televised fight Program described below. Those acts and omissions consisted of interception, reception, publication, divulgence, display and exhibition of J&J's property within the control of J&J in the State of Louisiana, but without its permission and/or authorization. J&J may refer to the acts as

"interception"; however, that term includes all methods of unlawful access to the plaintiff's Program described below.

3.

**Defendants**

The following persons are the defendants in this complaint:

(a) **Sweet Ultimate Bar and Grill LLC d/b/a Sweet Ultimate Bar and Grill (Sweet)**, having its principal place of business located at 3669 Government Street, Baton Rouge, East Baton Rouge Parish, Louisiana 70806; and,

(b) **Debra Jackson (Jackson)**, a major resident of and domiciled at/in 1457 Carolyn Sue Drive, Baton Rouge, East Baton Rouge Parish, LA 70816.

4.

J&J is informed, believes and alleges that for all times pertinent to the facts of this complaint Sweet owned, operated, licensed, permitted, had dominion over, controlled, oversaw and managed the commercial establishment named as Sweet Ultimate Bar and Grill LLC d/b/a Sweet Ultimate Bar and Grill and located at 3669 Government Street, Baton Rouge, East Baton Rouge Parish, Louisiana 70806.

5.

Sweet possessed and possesses a license to sell alcoholic beverages within East Baton Rouge Parish, Louisiana as shown by the official records of the Louisiana Department of Revenue, Office of Alcohol and Tobacco Control.

6.

Upon information and belief, Sweet's license described above was in full force and effect at all times pertinent to the facts alleged in this complaint.

7.

Jackson completed and signed "Schedule A's", which were filed with the Louisiana Department of Revenue, Office of Alcohol and Tobacco Control as part of the process for Sweet to acquire the license described above.

8.

The "Schedule A" described above was notarized and also certified that Jackson was either the "manager, owner, each partner, each officer, and every stockholder owning more than 5 percent of the capital stock" of Sweet. Also, the official records of the Louisiana Secretary of State also show that Jackson is the member of Sweet. A copy of the Schedule A and Louisiana Secretary of State's records will be introduced into evidence at the appropriate time.

9.

Because Sweet is a legal entity, it acts through its manager and members. Jackson as the member and manager of Sweet is also liable for all conduct occurring on the premises of Sweet including the acts of any person who unlawfully broadcasted, intercepted and/or published the Program described below, which was broadcasted on Sweet's premises all as more fully described below.

10.

Upon information and belief, J&J alleges the following acts accomplished by Jackson occurred on a daily basis or as needed concerning Sweet's commercial establishment (the

commercial establishment) located at 3669 Government Street, Baton Rouge, East Baton Rouge Parish, Louisiana 70806:

(a) reconciling all bank accounts for Sweet;

(b) reviewing inventory of alcoholic beverages on a daily basis;

(c) reviewing the condition and fitness of all equipment on the premises;

(d) collecting all money earned;

(e) paying all accounts payables;

(f) collecting all accounts receivables;

(g) cleaning and maintaining the furniture and fixtures;

(h) attending to any issues concerning televisions sets;

(i) reviewing all upcoming televised sporting events including, boxing, prize fights, martial arts and other similar television programming; and,

(j) meeting with each other to ensure that all of the items listed in (a) through and including (i) were accomplished on behalf of Sweet.

11.

J&J is a distributor of closed circuit pay-per view boxing and special events in the United States. Pay-per view means that in order for a customer to view the closed circuit event, it/he/she must pay a fee to J&J, which is/was set by J&J.

12.

Sweet owns/owned and operates/operated a bar and grill which serves/served alcoholic beverages. Sweet does possess a license to sell alcoholic beverages as shown by the official

records of the Louisiana Department of Revenue, Office of Alcohol and Tobacco Control.

13.

J&J is informed, believes and alleges that on May 2,2015 (the night of the Program, which is described below in paragraph 22), Sweet had the right and ability to supervise the business and activities of its commercial establishment, which included the unlawful interception, broadcast and/or publishing of J&J's Program.

14

J&J is informed, believes and alleges that on May 2, 2015 (the night of the Program, which is described below in paragraph 22), Sweet and Jackson supervised the activity of unlawfully intercepting, broadcasting and/or publishing J&J's Program, and, among other responsibilities, had the obligation to ensure that the sale of alcoholic beverages upon its premises was not in violation of law.

15.

J&J is informed, believes and alleges that on May 2, 2015 (the night of the Program, which is described below in paragraph 22), Sweet and Jackson specifically and wilfully directed its employees to unlawfully intercept, broadcast and/or publish J&J's Program on Sweet's premises. Furthermore, the actions of Sweet's employees were/are directly imputable to Sweet and Jackson by virtue of their acquiescence, knowledge and acknowledgment that the unlawful interception, broadcast and/or publishing of J&J's Program on Sweet's premises did occur.

16.

Upon information and belief, J&J alleges that Jackson carried out the instructions of

Sweet and took steps to unlawfully receive J&J's television signal, which transmitted the Program described in paragraph 22 below. Those steps taken by Jackson as instructed by Sweet probably consisted of one of the following to direct the television signal by cable transmission or satellite transmission to Sweet's commercial establishment located at 3669 Government Street, Baton Rouge, East Baton Rouge Parish, Louisiana 70806:

(a) setting up a "residential" account with either a cable television service provider or a satellite television provider and paying a nominal "residential" rate directly to the cable and/or satellite television provider for reception of the plaintiff's Program;

(b) use of a "blackbox", "hotbox", or "pancake box" which was purchased for a fee and when installed on a cable television line will allow for the descrambled reception of a pay-per-view broadcast;

(c) the use of a "smartcarrd" or "test card" or "programming card" which was purchased for a fee and when installed on a DSS satellite receiver will allow for the descrambled reception of a pay-per-view broadcast;

(d) the use of an illegal cable drop or splice from an apartment or home adjacent to the commercial establishment premises (which would purchase the broadcast at a residential price and divert the Program to the commercial establishment;

(e) the purchase of other illegal unencryption devices, and the purchase of illegal satellite authorization codes which are readily available on

the internet, in trade publications, and through "word of mouth"; or,

(f) somehow manipulating an electronic device such as a "fire stick" or other application that allows the "streaming" of video signals over the internet to the end user's computer.

(g) setting up a commercial account, but paying a residential fee to receive the plaintiff's Program.

17.

Sweet and Jackson charged a "cover charge" of $15.00 for admission to the unlawful broadcast of plaintiff's Program on the commercial establishment located at 3669 Government Street, Baton Rouge, East Baton Rouge Parish, Louisiana 70806.

18.

J&J is informed, believes and alleges that on May 2, 2015 (the night of the Program, which is described below in paragraph 22), Sweet and Jackson had and possessed an obvious and direct financial interest and commercial advantage and private financial gain in the activities conducted on its premises, which included the unlawful interception, broadcast and/or publishing of J&J's Program.

19.

.J&J is informed, believes and alleges that the unlawful and willful interception, broadcast and/or publishing of J&J's Program by Sweet resulted in a commercial advantage and private financial gain to Sweet due to the increased profits for Sweet and/or the possibility of increased profits for Sweet and Jackson.

20.

J&J is informed, believes and alleges that the unlawful and willful interception, broadcast and/or publishing of J&J's Program by Sweet resulted in a commercial advantage and private financial gain to Jackson due to the increased profits for Sweet and/or the possibility of increased profits for Sweet.

**COUNT I**

**(Violation of Title 47 U.S.C. Section 605 (a), (e) (3) (a) and (e) (4) and 18 U.S.C. section 2511 in conjunction with section 2520)**

21.

J&J incorporates by reference all of the allegations contained in paragraphs 1 through and including 20, as though reproduced here in full.

22.

Pursuant to a valid and enforceable contract, J&J was granted the exclusive nationwide commercial distribution and broadcast (closed-circuit) rights to "The Fight of the Century" Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program telecast nationwide on Saturday, May 2, 2015 (this included all under-card bouts and fight commentary encompassed in the television broadcast of the event, hereinafter referred to as the Program).

23.

Pursuant to the same valid and enforceable contract, J&J, entered into subsequent sub-licensing agreements with various commercial entities throughout North America, including entities within the State of Louisiana, by which it granted these entities limited sub-licensing rights, specifically the rights to publicly exhibit, broadcast and/or publish the Program within their

respective commercial establishments in the hospitality industry (i.e., hotels, racetracks, casinos, bars, taverns, restaurants, social clubs and other similar businesses). The defendants were **not** granted sub-licensing rights and/or any other right concerning the Program.

24.

As a commercial distributor and licensor of sporting events, including the Program, J&J expended substantial monies marketing, advertising, promoting, administering, and transmitting the Program to its customers, the commercial entities described above.

25.

With full knowledge that the Program was not to be intercepted, received, published, divulged, displayed, broadcasted and/or exhibited by commercial entities unauthorized to do so, the defendants named above, either through direct action or through actions of employees or agents directly imputable to the defendants (as outlined in paragraphs 1 through and including 24 above), did unlawfully intercept, receive, publish, divulge, display, broadcast and/or exhibit the Program at the time of its transmission at the defendant, Sweet's, commercial establishment located at 3669 Government Street, Baton Rouge, East Baton Rouge Parish, Louisiana 70806.

26.

The unauthorized interception, reception, publication, exhibition, divulgence, display, broadcast and/or exhibition by each of the defendants was done wilfully and for purposes of direct and/or indirect commercial advantge and/or private financial gain. J&J stands ready to present eye-witness testimony and other evidence supporting all allegations made in this complaint.

27

Title 47 U.S.C. Section 605, et seq. and Title 18 U.S.C. sections 2511 and 2520 prohibit

the unauthorized publication or use of communications (such as the transmission of the Program for which J&J had the exclusive distribution rights).

28.

By reason of the actions, omissions and conduct of all of the defendants described above, each of the defendants violated Title 47 U.S.C. Section 605, et seq. and Title 18 U.S.C. sections 2511 and 2520.

29.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 605, et seq, and Title 18 U.S.C. sections 2511 and 2520, J&J has the private right of action pursuant to Title 47 U.S.C. Section 605 and Title 18 U.S.C. sections 2511 and 2520.

30.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 605, et seq, and 18 U.S.C. sections 2511 and 2520, J&J is entitled to the following from each defendant:

(a) Statutory damages for each willful violation in an amount to $100,000.00 pursuant to Title 47 U.S.C. 605 (e)(3)(C)(ii), and also

(b) Recovery of full costs, including reasonable attorney's fees pursuant to Title 47 U.S.C. Section 605(e)(3)(B)(iii).

**COUNT II**

**(Violation of Title 47 U.S.C. Section 553)**

31.

J&J incorporates by reference all of the allegations contained in paragraphs 1 through and including 30 as though reproduced here in full.

32.

The unauthorized interception, reception, publication, divulgence, display, and/or exhibition of the Program by the above named defendants was prohibited by Title 47 U.S.C. section 553, et seq.

33.

By reason of the actions, omissions and conduct of all of the defendants described above, each of the defendants violated Title 47 U.S.C. Section 553, et seq.

34.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 553, et seq, J&J has the private right of action pursuant to Title 47 U.S.C. Section 553.

35.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 553, et seq, J&J is entitled to the following from each defendant:

(a) Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. 553 (c)(3)(A)(ii), and also

(b) Statutory damages for each willful violation in an amount to $50,000.00 pursuant to Title 47 U.S.C. 553 (c)(3)(B), and also

(c) Recovery of full costs, including reasonable attorney's fees pursuant to Title 47 U.S.C. Section 553(c)(2), and also

(d) in the discretion of this Honorable Court, reasonable attorney's fees, pursuant to Title 47 U.S.C. section 553 (c) (2) ©.

36.

Despite the existence of separate and distinct federal laws (Title 47 U.S.C. Section 605, et seq. and Title 18 U.S.C. sections 2511 and 2520 AND Title 47 U.S.C. Section 553, et seq), which were enacted at different times, some federal courts have held that a successful plaintiff may only receive damages under one of those laws. J&J asserts its claims under those sets of federal laws, but if the Court should find that the violations stated above occurred under one or the other statutes cited or that J&J may only recover one set of damages, then to that extent, J&J's claims should be considered as alternative claims. J&J does not seek double damages.

THEREFORE, J&J Sports Productions, Inc. prays that all of the defendants, Sweet Ultimate Bar and Grill LLC d/b/a Sweet Ultimate Bar and Grill and Debra Jackson , be served with a summons and copy of this complaint and required to answer it within the legal delays provided by the Federal Rules of Civil Procedure.

FURTHERMORE, J&J Sports Productions, Inc. prays for judgment in its favor and against all of the defendants, Sweet Ultimate Bar and Grill LLC d/b/a Sweet Ultimate Bar and Grill and Debra Jackson, in solido, for the following sums of money, subject to the jurisprudential rule that double damages are not permitted:

**As to Count I (Violation of Title 47 U.S.C. Section 605 and Title 18 U.S.C. sections 2511 and 2520)**

At J&J's elections in accordance with 47 U.S.C. section (e) (3) (B) and (C) (ii),

(a) statutory damages in the amount of $110,000.00 against the defendants, and each of them; and,

(b) reasonable attorney's fees as mandated by statute; and,

(c) all costs of suit, including but not limited to filing fees, service of process fees, investigative costs; and,

(d) such other and further relief as this Honorable Court may deem just and proper.

**As to Count II (Violation of Title 47 U.S.C. Section 553 (a) (1), (c)(1), (2), (B), (C), 3 (A), (B))**

(a) statutory damages in the amount of $60,000.00 against the defendants, and each of them;

(b) reasonable attorney's fees as may be awarded in the Court's discretion pursuant to statute;

(c) all costs of suit, including but not limited to filing fees, service of process fees, investigative costs; and,

(d) such other and further relief as this Honorable Court may deem just and proper.

The Berthelot Law Firm, LLC
1660 Thibodeaux Avenue
Baton Rouge, Louisiana 70802
(225) 454-0488—cell phone
1-484-842-8566–facsimile
ronniejberthelot@gmail.com
By: s/Ronnie J. Berthelot
Ronnie J. Berthelot, T.A.
LSBA bar roll no. 1012

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC. | * | CASE NO: |
| | * | |
| VERSUS | * | |
| | * | |
| SWEET ULTIMATE BAR AND GRILL LLC | * | JUDGE: |
| D/B/A SWEET ULTIMATE BAR AND GRILL | * | |
| AND DEBRA JACKSON | * | |
| | * | |
| | * | MAGISTRATE JUDGE: |

Certificate of Service

I certify that I mailed the foregoing "Complaint" to the following defendants:

Sweet Ultimate Bar and Grill LLC
3669 Government Street
Baton Rouge, LA 70806

Debra Jackson
1457 Carolyn Sue Drive
Baton Rouge, LA 70816

by placing a copy of the foregoing and the civil cover sheet in the United States Mail properly addressed and postage pre-paid on April 29, 2017.

s/Ronnie J. Berthelot
Ronnie J. Berthelot