UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

J&J SPORTS PRODUCTIONS, INC.                    CIVIL ACTION

VERSES

SWEET ULTIMATE BAR AND GRILL LLC                NO.: 17-00275-BAJ-RLB
D/B/A SWEET ULTIMATE BAR AND GRILL
AND DEBRA JACKSON

## RULING AND ORDER

Before the Court is the **Motion for Default Judgment (Doc. 11)**, filed by Plaintiff, J & J Sports Productions, Inc. Defendants in this case are Sweet Ultimate Bar and Grill LLC d/b/a Sweet Ultimate Bar and Grill and Debra Jackson. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. For the reasons that follow, Plaintiff's motion is **GRANTED**.

### I. BACKGROUND

Plaintiff owns and owned the exclusive rights to the closed circuit television event, *"The Fight of the Century" Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program* (the "Program"). (Doc. 11-1 at p. 1). Defendants are an LLC, which operates a restaurant and bar, and its member–manager, who controls the daily business operation, which allegedly broadcast the Program on May 2, 2015, without first purchasing a $3,000 to $6,000 business license from Plaintiff. (*Id.* at pp. 2–3). According to Plaintiff's investigators, Defendants charged a $15 cover fee, and

broadcast the Program on multiple televisions. (Docs. 11-6, 11-7).[1] Approximately 100 to 150 people were in the venue at the time of the fight. (Docs. 11-6, 11-7).

As a result, Plaintiff filed suit seeking statutory damages and attorneys' fees pursuant to 47 U.S.C. § 605, which provides a private right of action for the interception and publishing of radio communications; § 553(c), which prohibits the interception or reception of communications offered over a cable system; and 18 U.S.C. §§ 2511, 2520, which prohibit and provide a private right of action for the interception or reception of wire, oral, or electronic communications. (Doc. 1 p. 9, 12). Plaintiff properly served summons on Defendants on May 24, 2017. (Docs. 5, 6). Defendants did not respond, and accordingly, the Clerk of Court entered a default in this action. (Doc. 8).

## II. LEGAL STANDARD

The service of a summons triggers a duty to respond to a complaint and a failure to respond may result in the entry of default or default judgment under Federal Rule of Civil Procedure 55. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937–39 (5th Cir. 1999). When a party establishes by affidavit or some other method that there has been a default, the Clerk of Court will enter the default. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Once there has been an entry of default, the plaintiff may apply to the Court for a default judgment. *Id.*

Default judgments are usually disfavored under the Federal Rules of Civil Procedure. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276

---

[1] Plaintiff's investigators claimed that there were between three to seven televisions in the restaurant. (Docs. 11-6, 11-7).

2

(5th Cir. 1989). A default judgment is considered to be a drastic remedy that should only be available "when the adversary process has been halted because of an essentially unresponsive party." *Id.* (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Therefore, a party is not entitled to a default judgment, even where the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

In determining whether a default judgment should be entered, the Fifth Circuit has developed a two-part test. *Taylor v. City of Baton Rouge*, 39 F. Supp. 3d 807, 813 (M.D. La. 2014). First, the Court must determine whether the entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Factors relevant to this determination include: (1) whether there are material issues of fact at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by Defendant. *Id.* Second, the Court must assess the merits of Plaintiff's claims and find a viable claim for relief. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975).

III. **DISCUSSION**

A. **Appropriateness of Default Judgment**

The Court finds that default judgment is appropriate under the circumstances of this case and that Plaintiff has stated a viable claim for relief. Default Judgment

3

is appropriate because Defendants failed to file a proper and timely answer and have failed to produce evidence to show that the failure to file an answer resulted from "good faith mistake or excusable neglect." *See Lindsey*, 161 F. 3d at 893. Additionally, Defendants' failure to file an opposition to the motion or otherwise defend the instant suit for more than twelve months mitigates the harshness of a default judgment. Lastly, the Court is not aware of any facts that would constitute "good cause" to set aside default judgment if Defendants filed a motion requesting such.

### B. Viable Claim for Relief

The Court finds that Plaintiff's uncontested statement of material facts (Doc. 11-1) and attached supporting documents (Docs. 11-4 through 11-16) establish a viable claim for relief. Specifically, the Court finds that despite failing to acquire a business license for the Program, Defendants not only broadcast the fight, but also charged a cover fee on the day of the Program. (Doc. 11-6 at p. 1; Doc. 11-7 at p. 1).

The Fifth Circuit has noted that 47 U.S.C. § 553 and § 605 make different types of conduct unlawful. *J & J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351 (5th Cir. 2014). In *Mandell*, the Fifth Circuit held that while both § 553 and § 605 prohibit the interception of communications, "[a] logical reading of the two provisions reveals a clear demarcation whereby § 605 deals with communications traveling through the air (via radio), [and] § 553 covers communications traveling over cable wire." *Id.* at 352-53 (internal quotations omitted). Where, because of the defendant's failure to respond, a plaintiff has been unable to determine the method through which the defendant accessed the

4

unauthorized communication, district courts have awarded default judgments in favor of the plaintiff. *See e.g., J & J Sports Prods., Inc. v. Tiger Paw Daiquiris & Grill, LLC*, No. 14-268, 2015 WL 1800619, at *4 (M.D. La. Apr. 16, 2015) (Jackson, J.) (awarding damages under § 553 where, because of Plaintiff's failure to respond, it could not be established how the plaintiff received the broadcast); *J & J Sports Prods., Inc v. Wine Bistro LLC*, No: 13–6369, slip op. at 8–9 (E.D. La. July 30, 2014) (same). Although the manner in which Defendants intercepted the cable signal for the Program is not clear, the Court will nonetheless award damages under § 553.

### C. Remedies

Plaintiff alleges statutory damages for Defendants' violation under § 553, § 605, and 18 U.S.C. §§ 2511 and 2520 in the Complaint. (Doc. 1). Further, Plaintiff suggests that the enhanced statutory damages should be in the range of $10,000 to $15,000, together with attorney's fee of $3,000 to $4,000, based on the alleged violation of 47 U.S.C. § 553. (Doc. 11-2 at p.4, p. 9).

#### *1. Statutory Damages*

Plaintiff requests $10,000 for each violation of § 553 as statutory damages. (Doc. 1 at p. 12). Plaintiff's investigators made a showing that there were approximately 100 to 150 people in the restaurant when the Program was broadcasting. (Docs. 11-6, 11-7). The Court finds that based on prior cases an amount twice the minimum licensing fee of $3,000, or $6,000, is reasonable for statutory damages under § 553. *See J&J Sports Prods., Inc. v. Boil & Roux Kitchen, LLC*, No. 17-00276, 2018 WL 1089267, at *2 (M.D. La. Feb. 27, 2018); *J&J Sports Prods., Inc.*

*v. Onyx Ultimate Bar & Grill LLC*, No. 17-00589, 2018 WL 344964, at *4 (M.D. La. Jan. 9, 2018),

### 2. *Enhanced Statutory Damages*

Further, if the court finds that "that the violation [of § 553] was committed willfully and for purposes of commercial advantage or private financial gain" the Court may increase the damage award by up to $50,000. § 553(c)(3)(B). Although Plaintiff failed to make a showing here that Defendant repeatedly violated the statue over, Defendants' cover fee charge on the day of the program established that the violation was willful. *See, e.g., Onyx*, 2018 WL 344964, at *4. Here, Plaintiff's investigators claimed that there were multiple televisions in the restaurant broadcasting the Program. (Docs. 11-6, 11-7). Plaintiff's investigators were also charged $15 cover fee upon entering the restaurant. (Docs. 11-6, 11-7). Thus, Plaintiff makes a showing that Defendant violated the statute willfully.

Considering the conduct in this case and the conduct in similar cases, enhanced damages of $15,000 are more than reasonable. *Boil*, 2018 WL 1089267, at *2 (awarding a $19,000 enhancement for a willful violation for a restaurant and bar that advertised its broadcast and charged a cover for approximately 100 patrons); *Onyx*, 2018 WL 344964, at *4 (awarding a $24,000 enhancement for a willful violation for a restaurant and bar that charged a cover and had approximately 90 patrons); *J&J Sports Prods., Inc. v. KCK Holdings, LLC*, No. CIV.A. 14-00269, 2015 WL 4656714, at *1 (M.D. La. Aug. 5, 2015) (Jackson, J.) (awarding three times the statutory

6

damages for a willful violation where the defendant did not charge an admission fee and had only 25 patrons).

### 3. *Costs and Attorneys' Fees*

The Court, in its discretion, may award the prevailing party reasonable attorneys' fees and costs under § 553(c)(2)(C). Based on the affidavit of Plaintiff's attorney, Ronnie J. Berthelot, and his attached billing records (*see* Docs. 11-3, 11-4), the Court finds an hourly rate of $250 is appropriate. After calculating the lodestar and considering the applicable factors, *see Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998), the Court finds that attorneys' fees in the amount of $2,500 are reasonable under the circumstances. The Court taxes all costs to Defendants.

IV. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is awarded statutory damages in the amount of $6,000 and enhanced statutory damages of $15,000, for a total of $21,000.

**IT IS FURTHER ORDERED** that Plaintiff's costs, including reasonable attorneys' fees in the amount $2,500 are taxed to Defendants.

Baton Rouge, Louisiana, this 4th day of September, 2018.

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**